**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**TOKIO MARINE AMERICA INSURANCE COMPANY as subrogee of ROCKEFELLER GROUP INVESTMENT MANAGEMENT CORP.**
**Plaintiff,**

**v.**

**THE SEVERN GROUP, INC. and JAMES G. DAVIS CONSTRUCTION CO.**

**Defendants.**

**Civil Case No.: 16-cv-00593-RC**

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT THE SEVERN GROUP, INC.

Plaintiff Tokio Marine America Insurance Company ("Tokio"), as subrogee of Rockefeller Group Investment Management Corp., ("Rockefeller"), by and through its attorneys, Denenberg Tuffley, PLLC, moves the Court, pursuant to Fed. R. Civ. P. 56, to grant summary judgment in its favor on the claims against Defendant The Severn Group ("Severn"). Plaintiff is entitled to summary judgment on its claims because the undisputed facts and applicable law unequivocally demonstrate that Severn is liable to Plaintiff under the theory of negligence.

## MEMORANDUM OF LEGAL AUTHORITIES

The undisputed facts and applicable law make clear:

1. Severn owed Rockefeller both common law and contractual duties to install an expansion tank for the water heater in a professional manner, ensuring it was appropriately sized, and properly supported. **[Exhibit 2 – Subcontract Agreement between Severn and James Davis.]**

2. To satisfy its duties, Severn was required to install the expansion tank in accordance with the manufacturer's instructions, engineering drawings, and specifications.

**[Exhibit 2, p. 1 of "Exhibit B," ¶ 1; p. 2 of "Scope of Work" prepared on May 11, 2011.] [Exhibit 4 - Plaintiff's Expert, Jeff Edwards, Report.]**

3. Severn breached the duties it owed Rockefeller by failing to install the expansion tank in a manner that was compliant with the manufacturer's instructions, engineering drawings, and specifications. **[Exhibit 4 – Plaintiff's Expert, Jeff Edwards, Report.]**

4. Had an appropriately sized expansion tank been installed and properly supported, the water leak that was caused by a disconnect of pipe between the expansion tank and water heater wouldn't have occurred, thereby preventing the subject loss. **[Exhibit 4.]**

Accordingly, Plaintiff asks this Court to grant it summary judgment against Severn on Count I of its Complaint.

## STATEMENT OF UNDISPUTED FACTS

1. This lawsuit arises out of a water loss that occurred at Rockefeller's office located at 1101 K Street NW, Washington, D.C. on or around August 16, 2014 ("Date of Loss"). **[Exhibit 10 – Plaintiff's Complaint filed in Superior Court.]**

2. Prior to the loss, James Davis entered into a contract with Rockefeller's tenant, Mathematica Policy Research, Inc. ("Mathematica"), which leased the tenth floor, wherein James Davis would hire a subcontractor to install a water expansion tank in the leased space. **[Exhibit 1 – Mathematica Contract.]**

3. James Davis subcontracted with Defendant Severn to install the water expansion tank. **[Exhibit 2.]**

4. Pursuant to the contract entered into by Defendant Severn and Defendant James Davis, Severn is obligated to indemnify and save harmless James Davis from any and all claims and liabilities for property and personal injury arising out of resulting from or in connection with the execution of work, whether or not caused in part by the active or passive negligence or other

fault of a party indemnified in the contract. *See* ECF Doc. 16[1] - ¶ 4. *See also* ECF Doc. 18[2] - ¶ 1. **[Exhibit 2, p. 2 ¶ 6.]**

5. The expansion tank installed by Severn was manufactured by Flexcon. **[Exhibit 9 – Severn's Expert Lawrence Marley Jr., Deposition Transcript – 29:20-29:23.]**

6. Flexcon's manufacturer specifications include a sizing chart for what size expansion tanks should be installed on a particular water heater depending on the water capacity of the water heater. **[Exhibit 3 – Flexcon's Sizing Chart.]**

7. The Flexcon expansion tank sizes range from a pH-5 (the smallest size expansion tank with a water capacity of 2.1 gallons), pH-12 (the middle size expansion tank with a water capacity of 4.8 gallons), and pH-25 (the largest size expansion tank with a capacity of 9.0 gallons). **[Exhibit 3.]**

8. The water heater involved in this loss was a 40-gallon water heater. **[Exhibit 11 – Plaintiff's Expert Jeffrey Edwards Deposition Transcript – 44:02-44:04.] [Exhibit 9 – 30:01-30:09.]**

9. The Flexcon sizing guide states that a pH-5, the smallest size tank should be installed on a 40-gallon tank. **[Exhibit 3.]**

10. The Flexcon sizing guide states a pH-5 expansion tank should be installed on a water heater with the volume of 30-gallons through 80-gallons when the maximum water temperature is 130 degrees. **[Exhibit 3.]**

11. The Flexcon sizing guide states that a pH-12 should be installed on a 100-gallon water tank when the maximum water temperature is 130 degrees. **[Exhibit 3.]**

[1] Defendant James G. Davis Construction Corporation's Cross Claim Against Defendant, The Severn Group, Inc.
[2] Defendant/Cross-Defendant/Third-Party Plaintiff The Severn Group, Inc.'s Answer to Cross-Claim of Defendant James G. Davis Construction Corporation

12. The expansion tank installed by Severn was a size pH-25 and has a water capacity of 9.0 gallons, which is more than three (3) times the capacity of the expansion tank size recommended by Flexcon's sizing guide . **[Exhibit 3.] [Exhibit 4.]**

13. Both Plaintiff's expert and Defendant's expert concluded that the expansion tank installed by Severn was too large and not appropriate for the 40-gallon water tank. **[Exhibit 4.] [Exhibit 9 – 30:07-30:14; 31:15-31:17.]**

14. In addition, Flexcon's manufacturer's specifications also include a section titled, "Installation, Warnings, and Operation Instructions," which state "[t]he tank is designed to be supported by the system piping. Make sure that there is adequate means of supporting the system piping and if necessary add strapping, brackets of pipe hangars." **[Exhibit 6 – Flexcon's Manufacturer Instructions.]**

15. Flexcon's instructions also include the following warning: "DO NOT INSTALL THIS EXPANSION TANK IN THE HORIZONTAL POSITION." **[Exhibit 6.]**

16. The expansion tank installed by Severn was connected by a horizontal branch. **[Exhibit 4.]**

17. There were no hangers to support the expansion tank or piping from above, and no struts or braces to support the materials from below. **[Exhibit 4.]**

18. On or around August 16, 2014, the weight of the horizontal water-filled piping and unsupported expansion tank led to bending forces at the point of attachment to the vertical piping, which caused that joint to fail, thus permitting water to flow freely out of the opening. **[Exhibit 4.]**

19. Repairs were made to the water system by Magnolia Plumbing ("Magnolia") following the loss. **[Exhibit 7 – Magnolia Plumbing's Post-Repair Letter.]**

20. Magnolia indicated the expansion tank was oversized (too large) for the water heater; the piping connecting the expansion tank and heater was 18" off the tee and was not supported in any way; the unsupported weight caused the tank to disconnect from the heater; and there was no vacuum breaker installed, as per the plumbing code. **[Exhibit 7.]**

21. To repair these deficiencies, Magnolia did the following: installed two new tees; installed a vacuum breaker; used a properly-sized expansion tank; and installed a bracket to support the weight of the properly-sized expansion tank. **[Exhibit 7.]**

**22.** Had the expansion tank been properly sized and supported, it is unlikely that this leak would have occurred, even if the expansion tank became waterlogged for any reason. **[Exhibit 4.] [Exhibit 5 – Severn's Expert Lawrence Marley Jr.'s Report, p. 3 ¶ 5.]**

23. Due to aforementioned factors, Plaintiff's Insured suffered significant water damage.

24. Prior to August 16, 2014, Tokio issued a property insurance policy that covered, among other things, the real property loss for the Insured.

25. As a result of this payment, Tokio subrogated to the Insured's recovery rights against the Defendants.

## ARGUMENT

### I. The Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 322. To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." *Id*. at 324. A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In considering whether there is a genuine dispute as to material fact, the court must draw all reasonable inferences in favor of the non-moving party. *Tao v. Freeh*, 27 F.3d 635, 636 (D.C. Cir. 1987).

## II. Plaintiff is Entitled to Summary Judgment on Count One of its Complaint

Plaintiff alleges a claim of negligence and gross negligence against Severn in Count One of the Complaint. **[Exhibit 10.]** To satisfy a negligence claim in the District of Columbia, Plaintiff must show: (1) the Defendant owed a duty to the Plaintiff; (2) the Defendant breached its duty; (3) that breach was the proximate cause of Plaintiff's damages; and (4) Plaintiff sustained damage. *Cannon v. Wells Fargo Bank, N.A.*, 952 F. Supp. 2d 1, 10 (D.D.C. 2013) (citing *Busby v. Capital One, N.A.*, 772 F.Supp.2d 268, 283 (D.D.C.2011). Gross negligence "requires such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others." *District of Columbia v. Walker*, 689 A.2d 40, 44–45 (D.C.1997). The undisputed facts outlined above demonstrate that Plaintiff is entitled to summary judgment on its negligence and/or gross negligence claims.

### A. Negligence

#### i. Duty

In determining the existence of a duty owed to a plaintiff, [courts] have applied a "foreseeability of harm" test, which is based on the recognition that duty must be limited to avoid liability for unreasonably remote consequences. *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 794 (D.C. 2011). "The question of whether a defendant owes a duty to a plaintiff under a particular set of circumstances is entirely a question of law that must be determined only by the court." *Id*. at 811.

In the instant case, Defendant Severn undertook a project to install the expansion tank on the Insured's property. Defendant Severn therefore had a duty of care to the Insured to complete this task in a skillful, prudent, and workmanlike manner. Contractors such as Defendant Severn have a common law duty to exercise reasonable care to prevent foreseeable harm. *See Barfield v. Langley*, 432 So.2d 748, 749 (Fla. 2d DCA 1983). Furthermore, contractors have a duty to comply with building codes when conducting their work, and violation of a building code "constitutes prima facie evidence of negligence." *St. Cyr v. Flying J Inc.*, 2006 U.S. Dist. LEXIS 52239 (M.D. Fla. 2006); *Lindsey v. Bill Arflin Bonding Agency*, 645 So.2d 565, 567 (Fla. 1st DCA 1994).

**ii. <u>Breach</u>**

Severn breached its duty owed to Plaintiff to properly install an expansion tank on the water heater in Plaintiff's building in a skillful, prudent, and workmanlike manner. Severn breached this duty in a variety of ways, including but not limited to, installing an expansion tank that was too large for the 40-gallon water heater, failing to properly support the expansion tank, and installing the expansion tank in a horizontal position. **SUF ¶¶ 12, 16, 17.** Severn also breached its duty as a contractor by not abiding by the building's plumbing code when installing the water heater without a vacuum breaker. **SUF ¶ 20**.

The expansion tank installed by Severn was manufactured by Flexcon. **SUF ¶ 5**. Flexcon's manufacturer specifications include a sizing chart for what size expansion tanks should be installed on a particular water heater depending on the water capacity of the water heater. **SUF ¶ 6**. The water heater involved in the Loss was a 40-gallon water heater, which according to the Flexcon sizing guide would use the smallest size expansion tank, the pH-5. **SUF ¶ 8-9**. The Flexcon sizing guide indicates a pH-5 expansion tank should be installed on a water heater with the volume of 30-gallons through 80-gallons. **[Exhibit 6.]** The Flexcon sizing guide provides that a pH-12 should be installed on a 100-gallon water tank. **[Exhibit 6.]** The expansion tank installed by Severn was a size pH-25 with a water capacity of 9 gallons, which is more than three times what is recommended by Flexcon's sizing guide. **SUF ¶ 13.** Furthermore, prior to the installation of the expansion tank, a consulting engineer, WFT Engineering ("WFT"), reviewed the plumbing fixture submittals for the project at Plaintiff's building. **[Exhibit 8 – WFT Engineering Comments.]** Specifically, WFT reviewed the submittal of using a pH-5 on the subject water heater and provided the comment of "No Exceptions Taken." **[Exhibit 8.]** "No Exceptions Taken" indicates "the submittal meets the intent and requirements of the contract drawings and/or specifications and no revisions to the submittal are required." **[Exhibit 8.]**

Plaintiff's expert concluded the pH-25 expansion tank was oversized based on Flexcon's sizing chart and the construction drawings. **[Exhibit 4.] [Exhibit 11 – 84:07-85:06.]** Plaintiff's expert further concluded Severn's deviation from the manufacturer's sizing chart and the consulting engineers drawings constitutes improper installation by Severn. **[Exhibit 4.]** Moreover, Severn has provided no evidence to contest these conclusions. In fact, Severn's only expert, Lawrence Marley Jr., testified during his deposition that under no circumstances would a pH-25 been the appropriate size expansion tank to install. **[Exhibit 9 – 31:15-17.]** Mr. Marley

indicated that based on the Flexcon size guide and the construction drawings, a pH-5 would have been appropriate for the water heater involved in the Loss. **[Exhibit 9 – 29:15-31:17; 32:25-33:02; 33:03-34:16.]** Therefore, by installing a grossly over-sized tank on the water heater, Seven breached its duty to perform its work in a skillful, prudent, and workmanlike manner.

Severn's breach of its duty owed to Plaintiff did not stop at installing the wrong size tank on the water heater. Severn also failed to adhere to Flexcon's instructions regarding the proper installation position and adequate support for the expansion tank. **SUF ¶ 14-17.** Flexcon's "Installation, Warnings, and Operation Instructions" indicate "[t]he tank is designed to be supported by the system piping. Make sure that there is adequate means of supporting the system piping and if necessary add strapping, brackets of pipe hangars." **SUF ¶ 14**. The instructions also include the following warning: "DO NOT INSTALL THIS EXPANSION TANK IN THE HORIZONTAL POSITION." **SUF ¶ 15**. Severn proceeded to connect the expansion tank with a horizontal pipe. **SUF ¶ 16**. Moreover, Severn did not use hangers to support the expansion tank or piping from above. **SUF ¶ 17**. Severn also did not install struts or braces to support the materials from below. **SUF ¶ 17**. Severn's blatant failure to follow the manufacturer's instructions and failure to properly support the expansion tank amounts to improper installation. **[Exhibit 4.]** Severn's improper installation is a breach of its duty owed to Plaintiff.

**iii. <u>Cause</u>**

In the District of Columbia, "[p]roximate cause has been defined as that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *In re Fort Totten Metrorail Cases Arising Out of Events of June 22, 2009*, 895 F. Supp. 2d 48, 70 (D.D.C. 2012) (citing *Convit v. Wilson*, 980 A.2d 1104, 1125 (D.C.2009). "The question of proximate causation ... is at base one

of foreseeability." *In re Fort Totten*, 895 F. Supp. 2d at 70 (citing *Rieser v. District of Columbia*, 563 F.2d 462, 479 (D.C.Cir.1977). In the instant matter, it is undisputed:

- the Flexcon pH-25 expansion tank was oversized, and it was inadequately supported; these deviations from the construction drawings and manufacturer's instructions constitute improper installation; – [**Exhibit 4 – p. 11.]**

- the Loss Event is the result of the weight of the horizontal water-filled piping and unsupported expansion tank led bending forces at the point of attachment to the vertical piping, which caused that joint to fail, thus permitting water to flow freely out of the opening; and – **SUF ¶¶ 14-18** .

- had the expansion tank been properly sized and supported, it is unlikely that this leak would have occurred, even if the expansion tank became waterlogged for any reason – **SUF ¶ 22.**

More importantly, the undisputed facts show that the Loss Event occurred because Severn improperly installed the correct size tank on the water heater and failed to adhere to the Flexcon's sizing chart. **SUF ¶ 11-14, 22**. Further, Severn inexplicably deviated from the construction drawings. **[Exhibit 8.]** Severn failed to following Flexcon's installation chart regarding proper support for the expansion tank. **SUF ¶ 12**. Plaintiff's expert concluded these errors by Severn were the cause of the loss. **SUF ¶ 22; [Exhibit 4 – p. 11.]** Moreover, Plaintiff's expert concluded that had Severn installed the correct size expansion tank and properly supported the tank, it is unlikely the loss would have occurred. **[Exhibit 4 – p. 12.]**

Severn cannot point to any evidence contesting the above facts. As a non-moving party, Severn must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Frito-Lay, Inc. v. Willoughby*, 274 U.S. App. D.C. 340, 863 F.2d 1029, 1035 (1988) citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258, 106 S. Ct. 2505, 2515 (1986).

Severn's expert is unable to comment on the cause of the loss in any fashion. **. [Exhibit 9 – 25:10-26:08.]; [Exhibit 11 – Stipulated Agreement to Exclude Lawrence Marley Jr.'s Opinions.]** Plaintiff's evidence includes an expert conclusion that the installation of an oversized tank with improper support caused the loss. **SUF ¶ 22**. Severn, however, has offered no evidence or expert testimony to suggest there was another cause of the loss. Moreover, Severn has offered no evidence of any kind relating to the cause of the loss. As such, there is no dispute regarding the cause of the loss as only one party has offered a causal conclusion to a reasonable degree of engineering certainly.

**iv. <u>Damages</u>**

As a direct result of the expansion tank dislodging from the water heater, a free flow of water rushed out of the tank. Several floors of the building were damaged by water. Plaintiff's damages as a result of the Loss Event totaled $204,463.57. This amount was paid by Plaintiff to restore the building to a condition it was in before the Loss Event. "The measure of an owner's recovery for damages to real property is the cost of restoration of the property to the condition it was in prior to the injury or where that is impracticable, then the difference between the value of the property before and after the injury is the correct measure." *Wood v. Neuman*, 979 A.2d 64, 72 (D.C. 2009).

The Severn Group has not offered an expert to contend Plaintiff's damages.

**B. <u>Gross Negligence</u>**

"The United States Court of Appeals for this circuit has stated that 'gross negligence implies an 'extreme departure from the ordinary standard of care.'" *District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C. 1997) <u>citing</u> *Wager v. Pro*, 603 F.2d 1005, 1010 (1979) (quoting W. Prosser, Law of Torts, § 8, at 31 (1971)). To put it another way, [u]nder D.C. law, gross

negligence implies such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others." *Wise v. United States*, 145 F. Supp. 3d 53, 67-68 (D.D.C. 2015).

Severn's actions in installing the expansion tank amount to an extreme deviation from the ordinary standard of care. Mr. Edwards' report indicates to properly install the expansion tank, a contractor should have followed the manufacturer's specifications and engineering drawings that were submitted prior to the project. **[Exhibit 4.]** Prior to installing the expansion tank, Severn possessed multiple documents to use and refer to in order to ensure the proper tank was installed. The mere fact Severn installed a tank that was three times the size of the tank required is an extreme deviation. Moreover, Severn completely disregarded the manufacturer's installation directions regarding how to properly support the expansion tank. Finally, Severn did not install a vacuum breaker or backflow preventer, both of which are required by plumbing code according to Severn's own expert. **[Exhibit 9 – 27:09-27:16; 28:17-29:04.]** Severn's conduct prior to and during the installation process of the expansion tank amount to gross negligence when taken as a whole considering the documentation and references that were available.

## CONCLUSION

The undisputed facts show Plaintiff is entitled to summary judgment on its Negligence and/or Gross Negligence claims. Accordingly, Plaintiff asks this Court to enter summary judgment in its favor on all claims as requested herein.

Respectfully submitted,

DENENBERG TUFFLEY PLLC

**/s/ *Michael R. Marx***

Michael R. Marx (*Admitted Pro Hac Vice)*
DENENBERG TUFFLEY PLLC
28411 Northwestern Hwy., Suite 600
Southfield, MI 48034
T: (248) 549-3900/ F: (248) 593-5808
Email: MMarx@dt-law.com

Dated: September 5, 2017